**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GARY LEE JACKSON,** | ) | |
| **ID # 43700-177,** | ) | |
| Movant, | ) | **No. 3:14-CV-1341-M (BH)** |
| **vs.** | ) | **(No. 3:11-CR-0305-M)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received April 14, 2014 (doc. 1), should be **DENIED** with prejudice.

## I.  BACKGROUND

Gary Lee Jackson (Movant) challenges his federal convictions and sentences in Cause No. 3:11-CR-305-M.  The respondent is the United States of America (Government).

### A.    Background Facts

On August 11, 2011, a witness informed the Dallas Police Department that Movant left a cell phone in her car that contained images of child pornography.  (*See* No. 3:11-CR-305-M, doc. 12 at 3-4.) The photos were sent by text message from "Amber." (*Id*. at 4.)  Dallas Police Detective Lori Rangel obtained a search warrant that was executed at Movant's home on August 19, 2011.  (*Id*.) Movant agreed to speak with officers, and he admitted that the cell phone was his and that he had received numerous images of child pornography on that phone from Amber Schmidt.  (*Id*.)  He said he was attracted to children and had child pornography on his computer.  (*Id*.)  A preliminary search and a forensic examination of the computer revealed numerous images of child pornography.  (*Id*.

at 4, 5.)  Movant described the peer-to-peer programs and search terms he used to obtain child pornography; he had received and possessed over 1000 images and videos of child pornography. (*Id*. at 6.)  He also admitted to engaging in sexual conduct with several children.  (*Id*. at 4-5.)  On October 9, 2011, Movant was indicted for receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) (counts 1 and 2) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (counts 3 and 4).  (*Id*., doc. 1.)

**B.**     **Plea**

Movant pled guilty to counts 1 and 4 pursuant to a plea agreement on December 15, 2011. (*Id*., docs. 13, 47.)  In the plea agreement, he waived his rights, including the right to appeal, subject to the exceptions listed in the agreement.  (*Id*., doc. 13 at 1, 6.)  The agreement acknowledged that the sentence for count 1 could be 5-20 years of imprisonment, and up to 10 years of imprisonment for count 4.  (*Id*. at 2.)  It also acknowledged that the sentence would be imposed by the Court after consideration of the sentencing guidelines, the guidelines were advisory and not binding, no one could predict with certainty the outcome of the Court's consideration of the guidelines in this case, and he would not be allowed to withdraw his plea if the sentence was higher than expected.  (*Id*. at 3.)  It confirmed that his guilty plea was freely and voluntarily made and was not the result of force, threats, or promises apart from those set out in the plea agreement, and that there were no guarantees or promises from anyone as to what sentence the Court would impose.  (*Id*. at 5-6.)  In a factual resume, Movant admitted that he knowingly received and possessed images of child pornography, including images of prepubescent minors or children under the age of 12, and that he transported child pornography over the internet in the expectation of receipt of a thing of value.  (*Id*., doc. 12 at 1, 5-6.)

On December 15, 2011, Movant and his attorney appeared for his guilty plea, and he testified under oath.  (*Id.*, doc. 47.)  Movant stated that he understood the charges against him and admitted that he committed the offenses.  (*Id.* at 9.)  He understood his rights and knew that a guilty plea waived his rights, including the right to appeal.  (*Id.* at 5-6, 12-13.)  He understood the written plea agreement, and outside of it, no one had made any promise or assurance to him of any kind in an effort to convince him to plead guilty.  (*Id.* at 10, 13.)  He understood the judge's authority to determine the sentence and the role of the advisory guidelines, and he knew that he could not rely on promises or assurances from anyone as to the sentence he would receive.  (*Id.* at 6-7.)  A discussion then occurred about the range of punishment and concurrent or consecutive sentences:

> MS. SPARKS (prosecutor):  . . . although Count 1 and Count 4 do group under the Guidelines, that the range of punishment is actually up to 30 years because the Court could stack 1 and 4. It's not a mistake on the paperwork. I just want to make sure that that's understood by the Defendant, that that's actually the range of punishment, is 5 to 30, because there are two counts.
>
> THE COURT: All right.
>
> MS. SPARKS: I don't know that that's really spelled out when you just go over the range of punishment for the two counts.
>
> THE COURT: All right. Mr. Robles, have you had a chance to visit with Mr. Jackson about that?
>
> MR. ROBLES (defense counsel): Well, I mean, not specifically. If, you know, he brought it up right now, so –
>
> THE COURT: Okay.
>
> THE DEFENDANT: I don't -- I don't object.
>
> THE COURT: Well, it's not a matter of objecting. It's a matter of do you understand that each count has a range of punishment and the judge can decide to have the two sentences run together or the judge can decide to make them run separately, so that you have to finish one, the sentence for one count, and then go to the sentence for the other count, and that's what increases the range.  And that's what she means by stacking, I think. Is that

MS. SPARKS: That's correct, Judge. I just -- it's not in this case that that's particularly an issue. It could or couldn't be. I don't know. But I know in other cases that the Defendants have been somewhat mystified by that if it happens, and so I just want to make sure it's clear at the time of the plea that he understands what he's -- the potential is.

THE COURT: Okay.

THE DEFENDANT: Oh, all right. I understand.

THE COURT: You do understand? Okay. And as I explained earlier, do you understand that it is completely up to the judge as to how he will sentence you, and that's the decision he'll make after reading the presentence report and considering your objections and any evidence?

THE DEFENDANT: Yes.

THE COURT: All right.

MR. ROBLES: That, Your Honor, that we did discuss very -- very -- in detail, about the ultimate decision being up to the judge, in terms of even, you know, going beyond the range recommended in the report.

THE COURT: All right. All right.

MS. SPARKS: Thank you, Judge.

(*Id*. at 13-15.)  Movant acknowledged that he faced imprisonment for 5-20 years for count 1 and up to 10 years for count 4.  (*Id*. at 15-16.)  He understood the factual resume and admitted that the facts listed in it were true and correct.  (*Id*. at 18.)  The Court accepted his guilty plea based on a finding that it was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offenses charged in counts 1 and 4.  (*Id.,* doc. 23.)

**C.**     **Sentencing**

The presentence report (PSR) prepared by the probation office calculated a base offense level of 22.  (*Id*., doc. 27 at 13.)  The PSR also assessed enhancements for possession of images depicting

minors who had not reached the age of 12 years; distribution of child pornography for the receipt

of a thing of value; possession of material portraying sadistic or masochistic conduct; engaging in

a pattern of activity involving the sexual abuse or exploitation of a minor; use of a computer and an

interactive computer service regarding child pornography; and an offense involving more than 600

images of child pornography.  (*Id.* at 13-14.)   After a three-level reduction for acceptance of

responsibility, the total offense level was 42.  (*Id.*)  Combined with a criminal history category of

I, the applicable guideline range was 360 months to life, but based on the statutory maximum

sentences, the guideline range was 360 months.  (*Id.* at 22.)

Movant's attorney objected to a five-level enhancement for distribution of child

pornography, (*id.*, doc. 30 at 1), and a five-level enhancement for engaging in a pattern of activity

involving the sexual abuse or exploitation of a minor (*id.* at 2), but the probation office disagreed

and recommended no changes to the guideline range in the addendum to the PSR (*id.*, doc. 32-1 at

1-3).  A subsequent addendum corrected facts in the PSR.  (*Id.*, doc. 36.)  Counsel filed a sentencing

memorandum that relied in part on a psychological evaluation by Dr. Kristi Compton.  (*Id.*, doc. 34.)

The sentencing memorandum also withdrew the objection to the enhancement for engaging in a

pattern of activity involving the sexual abuse or exploitation of a minor.  (*Id.* at 8, n.6.)

At the sentencing hearing on April 27, 2012, counsel pointed out that this objection was

withdrawn and stated that Movant agreed.  (*Id.*, doc. 58 at 8.)  Movant's remaining objection was

overruled, and the PSR and addenda were adopted.  (*Id.*, doc. 38 at 1.)  The Court expressed doubt

that Movant could be rehabilitated and observed that there was no adequate basis for concluding that

he was a good candidate for rehabilitation, but stated that ultimately that was a question for the

Bureau of Prisons and mental health practitioners.  (*Id.*, doc. 58 at 79.)  Rehabilitation was not a

factor it considered in determining the sentence; it imposed a sentence based on the seriousness of the offense with the two principle factors being just punishment and protection of the public. (*Id.* at 80-81.) The Court sentenced Movant to 240 months of imprisonment on count 1 and to 120 months on count 2, with the sentences to run consecutively, for a total aggregate term of 360 months. (*Id.*, doc. 37 at 2.)

On appeal, counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed. (*Id.*, doc. 62); *United States v. Jackson*, No. 12-10509 (5th Cir. Feb. 19, 2013).

**C.**     **Substantive Claims**

In his § 2255 motion, Movant raised the following grounds:

(1) Counsel was ineffective for telling him he would receive concurrent sentences, counsel did not understand the law regarding consecutive sentences, and Movant did not understand he waived an appeal, resulting in a guilty plea that was not knowingly and intelligently entered (grounds 1 and 3);

(2) Counsel was ineffective for failing to suppress his coerced, false admissions of sexual contact with minors (ground 2);

(3) The Court erred by imposing consecutive sentences (ground 4).

(Doc. 1 at 4-7.) The Government filed a response on June 13, 2014. (Doc. 6.) Movant filed a reply brief on July 29, 2014, in which he contended that counsel was ineffective for failing to object to the Court's opinion concerning his low potential for rehabilitation. (Doc. 9 at 6.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.

1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

### III.  VOLUNTARINESS OF PLEA

Movant contends in grounds 1 and 3 that his guilty plea was not entered knowingly and intelligently because counsel was ineffective for telling him he would receive concurrent sentences and for not understanding the law regarding consecutive sentences.  He also claims that he did not understand that he waived an appeal.  (Doc. 1 at 4, 6.)

A plea of guilty waives a number of constitutional rights.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness

of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect under-

standing of the consequences, however.  The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea.  *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").  Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea."  *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).  Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine."  *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

## A.    Promise

Movant relies solely on the discussion at his rearraignment in support of his claim regarding concurrent sentences.

The plea agreement set out the range of punishment for each of the offenses.  (*See* 3:11-CR-305-M, doc. 13 at 2.)  In it, Movant acknowledged that no one could predict the sentence with

9

certainty and that there were no guarantees or promises from anyone as to what sentence the Court would impose. (*Id.* 3, 6.)  At rearraignment, he testified under oath that he understood the judge's authority to determine the sentence and the role of the advisory guidelines, and he knew that he could not rely on promises or assurances from anyone as to the sentence he would receive. (*Id.*, doc. 47 at 6-7.)  Counsel stated he had not discussed consecutive or concurrent sentences specifically with Movant.  (*Id.* at 14.)  The prosecutor and the Court explained the difference between consecutive and concurrent sentences, including that the sentences could run together or they could run separately, thereby increasing the range of punishment. (*Id.* at 14-15.)  Movant acknowledged that the sentences could be consecutive, and that the Court would make the sentencing decision. (*Id.* at 15.)  He acknowledged that if the sentence exceeded his expectations, he would still be bound by his plea of guilty. (*Id.* at 17.)  Outside of the written plea agreement, no one had made any promise or assurance to him of any kind in an effort to convince him to plead guilty.  (*Id.* at 13.)

Movant's plea agreement and sworn colloquy contradict his claim that his plea was involuntary because counsel did not understand consecutive sentencing and told him his sentences would be concurrent.  Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  They must also overcome the presumption of regularity and "great weight" accorded court records.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are

entitled to a presumption of regularity").

The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea.  A movant is entitled to an evidentiary hearing if he presents evidence of the exact terms of the alleged promise, exactly when, where, and by whom the promise was made, and the precise identity of an eyewitness to the promise.  *See Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).  A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties.  *Id.*   When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," there is no need for an evidentiary hearing.  *Id.*

Here, Movant has not stated specifically where and when counsel made any promise regarding concurrent sentences; he only states generally that counsel told him the sentences would be concurrent.  (Doc. 1 at 4.)  Even where defendants on collateral review provide independent evidence, courts review whether that evidence specifically supports the claims regarding counsel's promises.  *See, e.g., United States v. Merrill*, 340 F. App'x 976, 978-79 (5th Cir. 2009) (holding that an affidavit from a girlfriend does not provide "independent indicia of the likely merit of [Movant's] claims" because it did not describe with any specificity where or when counsel made the alleged promise, and "more fatally" did not indicate that the girlfriend was in fact an eyewitness to any promise made directly to [Movant]); *United States v. Medrano*, 4:12-CV-741-A, 2013 WL 1092813, *4 (N.D. Tex. Mar. 15, 2013) (holding that "sparse" declarations by [Movant's] wife that counsel told her that he faced an 8-10 year sentence, and by their daughter that she heard counsel make this

11

statement to her mother, were not sufficient to overcome the overwhelming evidence that [Movant] knew he faced a longer sentence and that no one had made promises to induce him to plead guilty). Movant has provided no independent affidavits or documentary evidence.

Movant has failed to overcome the presumption of veracity given to his sworn statements in court, and the presumption of affording great evidentiary weight to court records. *See Blackledge*, 431 U.S. at 73-74. His sworn statements in open court and the plea documents contradict his claim that his plea was involuntary. *See id*. Both reflect that he understood the sentencing range and that his sentences could be consecutive. Movant has not shown that his guilty plea was the result of any promise or misunderstanding by counsel about concurrent or consecutive sentences. He has not shown he is entitled to relief on these grounds.

## B.      Waiver of appeal

Movant's plea agreement and his sworn colloquy with the Court also contradict his claim that his plea was involuntary because he did not understand he waived his right to an appeal. In the plea agreement, he stated he understood his rights and waived his rights, including the right to appeal, subject to the exceptions listed in the agreement. (*See* No. 3:11-CR-305-M, doc. 13 at 1, 6.) At the rearraignment, he testified under oath that he understood his rights and knew that a guilty plea waived his rights, including the right to appeal. (*Id*., doc. 47 at 5-6, 12-13.) He has not shown that his guilty plea was involuntary due to any misunderstanding by him of the waiver of the right to appeal, or that he is entitled to relief on this ground.

## C.      Ineffective assistance of counsel

Movant contends counsel was ineffective for telling him he would receive concurrent sentences and for not understanding the law regarding consecutive sentences, resulting in an

12

involuntary plea.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).   However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[1]  The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." *Id.*

To successfully state a claim of ineffective assistance of counsel, a movant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

---

[1]  The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred.  *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). In the context of a guilty plea, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58.

As discussed, Movant has not shown his plea was involuntary because counsel promised him concurrent sentences, or because of any misunderstanding of the law regarding concurrent sentences.

At rearraignment, counsel stated he had not specifically discussed consecutive sentencing with Movant.  (See 3:11-CR-305-M, doc. 13 at 14.).  "[A]n attorney's failure to properly inform his client about his sentencing exposure may constitute ineffective assistance."  *Munson v. Rock*, 507 F. App'x 53, 56 (2d Cir. 2013), citing *Jenkins v. Greene*, 630 F.3d 298, 309 (2d Cir.2010) ("[C]ounsel's failure to properly advise a client of his sentencing exposure, such as the possibility of consecutive sentences, may indicate constitutionally ineffective assistance.").  Even if counsel's performance was deficient because he failed to specifically discuss with Movant how the sentences for the two counts could be stacked and run consecutively, Movant has not shown prejudice from this deficiency.  When counsel does not inform the defendant about the possibility of consecutive sentences, if the court provides the defendant with that information in the plea colloquy, there is no ineffective assistance of counsel because there is no prejudice.  *See United States v. Oliver*, 522 F. App'x 525, 529 (11th Cir. 2013).  Here, the Court explained the possibility of consecutive sentences to Movant, and he acknowledged that the sentences could be consecutive, that the Court would make the sentencing decision, and that he would still be bound by his plea of guilty if the sentence exceeded his expectations.  (*See* 3:11-CR-305-M, doc. 13 at 14-17.)  The colloquy contradicts his claims that he did not understand that he could receive consecutive sentences, and that the Court would make that decision.  He has not shown a reasonable probability that but for any failure by counsel to discuss consecutive sentences with him, he would not have pleaded guilty and would have insisted on going to trial.  He has not demonstrated prejudice.  *See Oliver*, 522 F. App'x at 529.

In conclusion, Movant has not shown that he is entitled to relief on grounds 1 and 3.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends in ground 2 that counsel was ineffective for failing to suppress his coerced,

false admissions of sexual contact with minors. (doc. 1 at 5.) His affidavit states that he provided false statements or confessions to the police under threats, coercion, and extreme psychological stress. (doc. 2 at 1-2.) He claims he was not given *Miranda* warnings and was promised he would not go to jail if he confessed everything. (*Id.*) He claims counsel should have sought to suppress the statements on the basis that the sexual conduct was not verified by the alleged minor victims. In his reply brief, he also alleges that counsel was ineffective for failing to object to the Court's opinion concerning his low potential for rehabilitation. (doc. 9 at 6.)

### A.    Sexual conduct with minors

"[C]ounsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). Movant does not allege he told his attorney that he did not receive *Miranda* warnings, that the officers promised anything in return for a confession, and or that his admission to sexual conduct with minors was false. There was evidence that the officers gave Movant *Miranda* warnings prior to his statements, and counsel's rendition of the facts in the sentencing memorandum stated that Movant was advised of his right to remain silent and his right to legal representation. (*See* 3:11-CR-305-M, doc. 34 at 8.) Movant has not shown counsel misperceived those facts.

Additionally, in the plea agreement, Movant acknowledged he understood and waived his right against self-incrimination, and he agreed that the factual resume, which included his admissions about sexual conduct with minors, was true. (*Id.*, doc. 13 at 1.) Counsel requested a psychological evaluation of Movant, during which he "freely admitted to molesting children," including his five-year-old niece, the same sexual behavior with minors he previously stated to the police. (*Id.*, doc. 34-1 at 2, 6.) In the sentencing memorandum, counsel relied on the psychological

evaluation to argue that Movant's willing and forthright disclosure of deviant sexual activities was a good indicator for rehabilitation. (*Id.*, doc. 34 at 3-4.) Under these circumstances, Movant has not overcome the presumption that counsel's representation fell within the wide range of reasonable assistance and that his actions were the result of sound strategy, *see Strickland*, 466 U.S. at 689.

Additionally, Movant's plea documents and other statements contradict his claim that counsel should have moved to suppress the statements because they were false. Movant's factual resume states that he told the police about sexual behavior with minors, including his niece. (*See* 3:11-CR-305-M, doc. 12 at 4-5.) In the plea agreement, he agreed that the factual resume was true. (*Id.*, doc. 13 at 1.) At rearraignment, he stated under oath that he understood the factual resume and that the facts listed in it were true and correct. (*Id.*, doc. 47 at 18.) He has failed to overcome the presumption of veracity given to his sworn statements in court, and the presumption of affording great evidentiary weight to court records. *See Blackledge*, 431 U.S. at 73-74. He has not shown that counsel should have moved to suppress his statements admitting to sexual conduct on the basis that they were false.

Movant also alleges that counsel said he was sickened by Movant's case. He does not allege how counsel's representation was deficient on that basis, or how that affected counsel's performance. *See Le v. Mullin*, 311 F.3d 1002, 1012 (10th Cir. 2002) (habeas petitioner not entitled to evidentiary hearing because there was no evidence that counsel's alleged racial bias against petitioner affected counsel's performance). Movant does not allege or show how he was prejudiced by counsel's alleged view of the case.

**B.**     **Consideration of potential for rehabilitation**

In his reply, Movant contends that counsel should have objected to the Court's expression

17

of doubt that he could be rehabilitated.  (doc. 9 at 6.)  He argues that the potential for rehabilitation was not a factor the Court could consider under 18 U.S.C. § 3553.

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that motions filed pursuant to 28 U.S.C. § 2255 "specify all the grounds for relief available to the moving party."  A movant may amend a § 2255 motion in accordance with Fed. R. Civ. P. 15.  *See United States v. Saenz*, 282 F.3d 354, 355–56 (5th Cir. 2002).  New claims raised for the first time in a reply brief need not be considered by the Court, however.  *See United States v. Marroquin*, No. 3:08–CV–0489, 2009 WL 89242, at *4 (N.D. Tex. Jan. 12, 2009); *Bonds v. Quarterman*, No. 4:07–CV–674, 2008 WL 4367294, at *3 n. 1 (N.D. Tex. Sept. 24, 2008); *see also United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (holding that a district court does not abuse its discretion in refusing to consider new issues in a § 2255 reply brief after the government filed its response).  Accordingly, the Court may decline to consider the ineffective assistance of counsel claim asserted for the first time in his reply.

Even if considered, Movant's claim lacks merit.

In *Tapia*, [564 U.S. 319, 131 S.Ct. 2382 (2011),] the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."  131 S.Ct. at 2393.  Post-*Tapia*, this court has explained that "a sentencing court errs if a defendant's rehabilitative needs are 'a "dominant factor" ... [that] inform[s] the district court's [sentencing] decision.' " *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014) (quoting *United States v. Garza*, 706 F.3d 655, 660 (5th Cir. 2013)); *see also United States v. Wooley*, 740 F.3d 359, 366 (5th Cir. 2014) ("[W]e have held that *Tapia* error occurs when rehabilitation is a dominant factor in the court's sentencing decision, and we have never required the appellant to establish that the court's improper reliance on rehabilitation considerations was the sole factor in sentencing.").  On the other hand, the district court does not violate *Tapia* if the need for rehabilitation is only a "secondary concern" or an "additional justification" for the sentence.  *Walker*, 742 F.3d at 616; *see also Garza*, 706 F.3d at 660 ("Our limited precedent post-Tapia has described the distinction between legitimate commentary and inappropriate consideration as whether rehabilitation is a 'secondary concern'

or an 'additional justification' (permissible) as opposed to a 'dominant factor' (impermissible) informing the district court's decision."). Notably, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *Tapia*, 131 S.Ct. at 2392.

*United States v. Pillault*, 783 F.3d 282, 290 (5th Cir. 2015). The Fifth Circuit has further explained:

> [W]e have found *Tapia* error when a sentencing court expressly relied on the 18 U.S.C. § 3553(a) sentencing factors if, despite the other proper justifications, the erroneous consideration of the need for rehabilitation is a "dominant" factor in the court's mind at sentencing. *See United States v. Culbertson*, 712 F.3d 235, 243 (5th Cir. 2013).
>
> \*   \*   \*
>
> [W]e have declined to find *Tapia* error when the district court merely advises the defendant of rehabilitative opportunities or expresses its hope that the defendant will take advantage of such rehabilitative programming while imprisoned. *See United States v. Receskey*, 699 F.3d 807, 808 (5th Cir. 2012) (finding that district court's mere discussion that it "would hope" defendant would participate in rehabilitative programming was insufficient to create *Tapia* error, particularly given the court's consideration of the factors under 18 U.S.C. § 3553(a)). Significantly, in *Receskey*, before sentencing the defendant, the district court expressly stated that a within-Guidelines sentence would not "begin to adequately and appropriately address" the proper statutory factors. *Id*. at 808. The district court then made a recommendation to the BOP for rehabilitative programming after imposing the prison sentence. *Id*. We explained that "[o]nly after [applying the statutory factors and imposing the sentence] did the court discuss opportunities for rehabilitation and urge Receskey to take advantage of them.... [The court's] concern over rehabilitation may have been an 'additional justification,' but it was not a 'dominant' factor in the court's analysis." *Id*. at 812. Likewise, in *United States v. Tatum*, 512 Fed. Appx. 402 (5th Cir. 2013) (unpublished), we reasoned that the district court's singular reference to the defendant's potential opportunity to participate in rehabilitative counseling services, alongside the court's proper consideration of deterrence and the protection of the public, did not violate *Tapia*. *Id*. at 402 (upholding the sentence because a "review of the record convince[d] [the court] that the district court did not impose or lengthen Tatum's eighteen-month sentence on [the] basis [of the need for rehabilitative services]").
>
> Thus, this circuit's relevant precedent distinguishes isolated references to rehabilitative opportunities from a district court's repeated emphasis on a defendant's perceived need for treatment. Additionally, . . . we have repeatedly found that a court's express reference to the proper statutory factors does not necessarily cure Tapia error if a review of the record reveals that the court's consideration of the

defendant's need for rehabilitation was the "dominant factor" in the court's imposition of the sentence. *See, e.g.,* [*United States v. Garza*, 706 F.3d 655, 660 (5th Cir. 2013)].

*United States v. Wooley*, 740 F.3d 359, 364, 365 (5th Cir. 2014).

Here, at sentencing, the Court stated that Movant was a dangerous person. (*See* 3:11-CR-305-M, doc. 58 at 79.) It expressed doubt that he could be rehabilitated and observed that there was no adequate basis for concluding that he was a good candidate for rehabilitation, but it expressly stated that rehabilitation was a question for the Bureau of Prisons and mental health practitioners. (*Id.*) It did not consider rehabilitation as a sentencing factor; the two principle factors were just punishment and protection of the public. (*Id.*) Accordingly, there was no *Tapia* error, and counsel was not ineffective for failing to object. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (counsel is not ineffective for failing to raise a meritless argument).

## V.  CONSECUTIVE SENTENCES

In ground four, Movant claims that the Court erred in imposing consecutive sentences because he expected concurrent sentences based on counsel's advice.

When he pled guilty, he voluntarily waived his right to collaterally attack his conviction and sentence, except for a claim of ineffective assistance of counsel. (*See* 3:11-CR-305-M, doc. 13 at 6.) Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994) (per curiam), *accord United States v. White*, 307 F.3d 336, 343 (5th Cir.2002). "A defendant's waiver of [his or] her right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." United States v. Baty, 980 F.2d 977, 979 (5th Cir.1992).

The record reflects that Movant understood the consequences of his waiver of the right to contest his conviction and sentence in a collateral proceeding.  As discussed, his guilty plea was voluntary.  He has waived his right to collaterally challenge his conviction and sentence on the basis of error in assessing consecutive sentences.  Moreover, Courts may impose consecutive sentences. *See United States v. Moreno-Padilla*, 630 F. App'x 287, 288 (5th Cir. 2015); see also 18 U.S.C. § 3584(a).  He has not shown he is entitled to relief on this claim.

## VI.  RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 15th day of June, 2016**.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE